Plaintiff has filed this suit seeking to recover from defendant the sum of $1001.44 which he alleges is due him for services rendered to the defendant in the construction, repairing and supervision of certain buildings and improvements on property owned by the defendant. The plaintiff sets forth in detail the various services and buildings upon which plaintiff's claim is based, which said article is as follows:
"Since February 27, 1946, petitioner has contracted with defendant and as a result of said contract of employment, has rendered services for defendant on construction and repair jobs on property owned by defendant, all of which is located in the Parish of East Baton Rouge, and the different jobs on which defendant employed petitioner to work are as follows:
"(a) The supervision of construction of a dwelling house on Chatsworth Street, Magnolia Place, Baton Rouge, Louisiana
"(b) The supervision of the construction of a garage located on the premises located on Chatsworth Street, Baton Rouge, Louisiana.
"(c) The supervision of the construction of the finishing up of a building located on the Airline Highway about one-half mile North of circle toward the river bridge, and previously started by a party named Claude Thibodeaux.
"(d) The supervision of the construction of one apartment located in the building on Airline Highway and being built in part of the building mentioned in 4(c) above, but originally not included in the contract to build the building set forth in 4(c) above.
"(e) The supervision of furnishing and applying a metal roof on a building located on Airline Highway, in the rear of the building set forth in paragraph 4(c) above.
"(f) The supervision of replacing a roof on a dwelling house located at 3008 Jackson Avenue, Baton Rouge, Louisiana.
"(g) The supervision of the construction of a shop owned by the defendant and located at 205 East Polk Street, Baton Rouge, Louisiana, and now occupied by one Ralph Morrow."
Plaintiff alleges that as a consideration for the supervision of the construction of the building of the dwelling house set forth in 4(a) that the defendant agreed to give him one Willis Pick-up truck, which truck was delivered to petitioner in full payment therefor.
Plaintiff further alleges that as a consideration for his services as set forth in 4(c) defendant agreed to pay him the sum of $800.00 of which $500.00 has been paid; that the construction and finishing up of the Airline building was to consist of the supervision of the construction of one big second-hand parts work shop, on the first floor, and one apartment on the second floor, which apartment consisted of one-half *Page 909 
of said floor, the other half to be a storage room.
Plaintiff alleges that the defendant agreed to pay him 20% of the total cost of labor and material used in the construction of the buildings described in Article 4(b), (d), (e), (f), (g) as a consideration for his services.
Plaintiff also made the following allegation in Article 21 of the petition;
"And now in the alternative, if the Court should find that the above is not owing petitioner under the agreement heretofore set forth, petitioner now shows that the defendant owes said sum under a quantum meruit, in payment for services rendered."
Defendant denies that he owes plaintiff any amount for any services alleged under Article 4 of the plaintiff's petition except the sum of $300.00 for services rendered by the plaintiff to the defendant under Article 4(c) of plaintiff's petition, but the defendant further sets forth that the plaintiff has not completed his part of the contract in that there is still work to be done to the apartments upstairs, and the second-hand parts room downstairs must be ceiled and plastered in order to finish it. Defendant further answers that he was only to pay the labor and materials necessary to construct the buildings set forth in Article 4(b), (e) and (f) of plaintiff's petition.
Upon the trial of the case, counsel for plaintiff and defendant entered into the following stipulation:
"It is stipulated by and between counsel for the plaintiff and defendants that on all of the various jobs in question, defendant has admittedly paid all costs of material and labor charges other than the alleged contractor's commission. That all labor furnished by Bailey as supervisor was paid for by Bailey and he was reimbursed for the amount he expended for labor by Culotta, and that the materials that went into the different jobs were paid for by Culotta upon the presentation of vouchers by the various vendors of material."
"It is stipulated by and between counsel for plaintiff and defendant that the labor charges and material costs set forth in Paragraphs 16, 17, 18 and 19 of the petition are correct and there is no need to supplement by evidence."
The case was duly tried and the Judge of the District Court, without written reasons, dismissed plaintiff's suit at his cost as in case of non-suit. From this adverse judgment of the district Court, plaintiff has appealed.
The evidence in the case shows that on January 25, 1946 the plaintiff and defendant entered into a short written agreement whereby the plaintiff agreed to order all materials, furnish all labor and construct a residence, and the defendant agreed to pay all bills for materials and all labor weekly. It was agreed that the plaintiff was to receive in consideration of his services one Willis pickup truck. This is the only written agreement entered into between the plaintiff and the defendant, all others with regard to all other work as outlined in Article 4 of plaintiff's petition being oral. Plaintiff admits that he received this truck. The labor and materials for this job were approximately $5,900.00.
During the year 1946 material was scarce, and both the plaintiff and defendant testified that in order for a contractor to keep his labor employed, it was necessary to have quite a number of jobs under construction at the same time, and, therefore, defendant contends that in order to assist plaintiff in keeping his labor busy he only agreed to pay the labor and material cost for putting a roof on his home and for building the garage in the rear of the dwelling on Chatsworth Street, Magnolia Place, Baton Rouge, and also for applying a metal roof on the small building located in the rear of the large building on the Airline Highway. This is denied by the plaintiff and he testified that he told the defendant that his customary charge for any work under $500.00 was 35% to 40%; up to $1000.00 from $500.00, 30%; and up to $10,000.00, 20%, "However, for our work, the little, big and all, I would do it all for twenty per cent."
Plaintiff testified that on the completion of each of these jobs, he rendered a bill, but did not keep a copy thereof, to the defendant. This is emphatically denied by the defendant, and, from the testimony, we *Page 910 
are of the opinion that plaintiff did not render any bill or make any demand upon the defendant until after defendant refused to employ the plaintiff to construct the building on Highland Road during or shortly after December of 1946.
In some respects, the testimony of the defendant is not entirely satisfactory; but, taking all of the testimony, we do not believe that there was any agreement or understanding between plaintiff and defendant except as to the construction of the dwelling house on Chatsworth Street (Art. 4(a) of plaintiff's petition); Art. 4(c) the supervision of the construction of the uncompleted building located on the Airline Highway, and the supervision of the construction of a building located at 205 East Polk Street, City of Baton Rouge, and referred to in the testimony as the Ralph Morrow job. All of these various jobs were under construction at practically one and the same time, which was, of course, due to the shortage of materials, and if the materials ran out on one job, the labor was transferred to another job where they could get material.
There is no doubt that defendant paid the plaintiff 20% for the construction of the building at 205 East Polk Street. While defendant denies that he originally agreed to pay 20%, he testifies that on this particular job the plaintiff stated that material and labor would cost $2000.00 and that he, defendant, agreed to pay to the plaintiff $400.00 for supervising construction of this building. Of course, this is 20%. Upon the completion of the job, the cost of labor and materials amounted to $3267.12 and the defendant paid to the plaintiff $653.43, which is 20% of the above cost. Defendant, however, testified that he paid this under protest, and at that time decided not to employ the plaintiff to do any more work for him. While the plaintiff testifies that the final payment on the Ralph Morrow job was made to him on January 9, 1947, the defendant has introduced in evidence check #1072, signed by the defendant for $193.19, and written on said check is: "Ralph Bldg in full." This check is not dated, however, it bears the Louisiana National Bank stamp, December 23rd, 1946. Defendant's wife and the witness Tony Maggio testified that they were present when the plaintiff received this check and that the plaintiff stated to the defendant in their presence that the defendant had paid him everything except $300.00 which would be due on the Airline Building (Art. 4(c)). as soon as he (plaintiff) completed the job. Plaintiff denies such a statement.
Plaintiff is asking for $443.67 for the supervision of the construction of the north apartment located in the building on Airline Highway (Art. 4(d), which he contends was originally to be a storeroom, and that the defendant changed his plans after the original agreement and had him to build this apartment. The total labor and material cost on this apartment was $2218.53. Plaintiff's claim of $443.67 is 20% of this amount. This building, when completed, contained two apartments upstairs, commonly referred to in the testimony as the south apartment and the north apartment, the latter being the one plaintiff claims was not included in the original agreement.
It appears that the defendant had originally employed a contractor by the name of Cloid Thibodeaux to construct this building, but evidently became dissatisfied with Thibodeaux, or Thibodeaux had taken the building too cheap to complete it, and, in any event, after Thibodeaux had partially constructed the outside concrete block walls, the defendant entered into an agreement with the plaintiff to complete the building for $800.00. The evidence shows that the labor and material necessary to complete this building at the time that the plaintiff took over the supervision amounted to approximately $12,000.00 to $14,000.00. The defendant had in his employ prior to and during the time that the plaintiff was working for the defendant, a carpenter by the name of Harmon Ward. Ward testified that he was employed by the defendant prior to the time that the plaintiff went to work upon the Airline Building and that he always understood that this building was to contain two apartments upstairs and a paint room and second-hand parts room downstairs; that *Page 911 
the second-hand parts room was to be ceiled and plastered. He further testified positively that the metal lathe was put on in the north apartment first. The plaintiff testifies that the metal lathe was put up in the south apartment first, and was practically all up at the time the defendant decided to make an apartment out of the so-called storage room on the north end of this Airline building.
Plaintiff also called as a witness O.C. Lagard, who was employed by him as a foreman and who testified that, according to his instructions, only one apartment was to be built upstairs in the Airline Building.
Thus, we have the testimony of the plaintiff and one witness as against the testimony of the defendant and one witness that there was to be only one apartment in this Airline Building. It is clear that the plaintiff did not take the Airline job on a 20%, commission basis, and it is also clear that if the building was to contain only one apartment that at the time the alleged change in plans was made there was no agreement that the plaintiff was to charge 20% for the supervision of the construction of this so-called second or north apartment. In view of the testimony, we are of the opinion that the plaintiff has failed to prove that the building was to contain only one apartment.
While the plaintiff contends that he has completed his part of the work on the Airline building, the photographs introduced in evidence by the defendant clearly show that there is some work still to be done upstairs, and the downstairs secondhand parts room is totally unfinished. Plaintiff contends that this downstairs room was finished in accordance with his agreement. On this phase of the agreement, again the testimony is hopelessly in conflict, and we are of the opinion that plaintiff has failed to prove his contention that this second-hand parts room was not to be ceiled and plastered, and we are also of the opinion that if the burden rested upon the defendant, that his proof would not be sufficient to sustain his contention that it was to be ceiled and plastered.
On the contractual claim of the plaintiff, the evidence convinces us that only one job was on a 20% basis and that was the Ralph Morrow job designated as Art. 4(g) in plaintiff's petition; that there is not sufficient evidence to prove an agreement for any definite amount to be paid the plaintiff by the defendant for jobs designated as Art. 4(b); (d), (e), and (f) in plaintiff's petition, other than the labor and material costs, for the reason that the plaintiff never rendered a bill to this defendant for these amounts and it is shown that the defendant paid all labor weekly and material bills promptly and without question. Plaintiff testified that defendant had told him he was short of funds is the reason that defendant had not paid him these amounts. This is entirely disproven by the fact that defendant evidently was not short of funds as he paid all other bills promptly. There is no evidence to even indicate that defendant was short of funds. Also, we believe that plaintiff did make the statement in the presence of defendant's wife and the disinterested witness, Tony Maggio, that the defendant had paid him all that he owed him except $300.00, which would be due when he completed the Airline building.
Counsel for defendant objected to any testimony on plaintiff's alternative plea upon the merits, set forth in Article 21, on the ground that such a plea must be set forth with particularity and in detail. Regardless of this objection, the testimony is not sufficient upon which to base a judgment on quantum meruit. The record fails to show the amount of time the plaintiff worked in the supervision of the construction of these various buildings on which he claims that 20% of the labor and materials is due to him for his services. Plaintiff fails to prove, except by his own testimony, that 20% is the usual and proper charge for such work; in fact, he has absolutely failed to prove sufficient facts to justify a recovery on quantum meruit.
It is, therefore, ordered that the judgment of the District Court be and the same is hereby affirmed. *Page 912